IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 4, 2024

## MADARYL HAMPTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-22-15  Donald H. Allen, Judge**

_____

### No. W2024-00235-CCA-R3-PC

_____

The petitioner, Madaryl Hampton, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and KYLE A. HIXSON, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Madaryl Hampton.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On direct appeal, this Court summarized the facts surrounding the petitioner's convictions for convicted felon in possession of a firearm, as follows[1]:

---

[1] The petitioner was indicted for possession of marijuana with intent to sell or deliver (counts one and two), possession of a firearm during the commission of a dangerous felony (counts three, four, five, six, seven, eight, nine, and ten), convicted felon in possession of a firearm (counts eleven, twelve, thirteen, and fourteen), and tampering with evidence (count fifteen). Counts five, six, seven, eight, nine, ten, and fifteen were dismissed prior to trial. The trial court severed counts eleven, twelve, thirteen, and fourteen.

The [petitioner] was indicted by the Madison County Grand Jury with multiple counts of drug and weapons related offenses, all stemming from a single encounter with the Jackson Police Department (JPD). These counts were severed into two trials, one dealing with the drug related offenses and the other the weapon related offenses. In the first trial, the [petitioner] was convicted of two counts of simple possession of marijuana. In his second trial, the [petitioner] was convicted of four counts of being a felon in possession of a weapon. The trial court merged each of these counts and sentenced the [petitioner] as a Range II offender to twenty years' imprisonment for the weapon offenses to be served consecutively to eleven months and twenty-nine days' imprisonment for the possession of marijuana convictions.

. . .

[I]t is necessary to detail the [petitioner's] indictments in full and to explain how they were disposed of in this case. In his first trial, although the [petitioner] was charged with alternative counts of possession of marijuana with intent to sell or deliver in counts one and two, he was convicted of the lesser-included offenses of simple possession of marijuana. He was also acquitted of unlawful possession of a firearm with intent to go armed during the commission of a dangerous offense (possession of marijuana with intent to sell/deliver) in counts three and four. Counts five through ten, alternative charges of unlawful possession of a firearm during the commission of a dangerous felony (possession of marijuana with intent to sell/deliver) as well as unlawful possession of a firearm during the commission of a dangerous felony (possession of marijuana with intent to sell/deliver) by a previously convicted felon and count fifteen, tampering with evidence, were dismissed by the State. The record does not contain a transcript detailing the reasoning supporting the severance of the offenses or the respective parties' position on the action taken by the trial court in doing so. At sentencing in the instant case, however, the trial court noted that it had previously severed the counts herein from the above listed counts because it "was appropriate that a jury who was trying to determine whether or not [the petitioner] was in possession of marijuana with intent to sell or deliver, whether or not he was in possession of a firearm during the commission of a dangerous felony . . . those charges

---

Thus, the petitioner's first trial consisted of counts one, two, three, and four, and his second trial consisted of counts eleven, twelve, thirteen, and fourteen. The petitioner's second trial is the subject of this appeal.

- 2 -

should be tried separately from the charges where he was actually indicted for being a convicted felon in possession of a firearm."

In regard to the remaining convicted felon in possession of a firearm offenses in counts eleven through fourteen, the following proof was adduced at the [petitioner's] May 9, 2019 trial. JPD Officer Terry Troutt testified that he arrested the [petitioner] for being a felon in possession of a firearm on January 20, 2018. He responded to an apartment complex at 216 Roosevelt Parkway around 8:50 that night, and, even though it was dark outside when he arrived, he said that the apartment complex was "well-lit." He described the area as a "high crime area." Officer Troutt responded to the apartment complex that night because he "had been given information about an individual with a warrant." Although he could not remember the name of the person who had a warrant, he had a description and a picture of the person who was the subject of the warrant. He testified that, when he arrived at the apartment complex, he was in a marked JPD patrol vehicle, and an officer whom he was training accompanied him.

Officer Troutt saw a group of five to ten people standing around when he arrived, but he was not able to make out any of their faces at that time. He saw the [petitioner], who he believed matched the description of the person that he was looking for, but he could not see his face clearly at that time. Officer Troutt followed the [petitioner] to get a closer look at him, but he said that he had not activated his blue lights or drawn his weapon at that point. He also did not "give[] any commands" to the [petitioner] or any of the individuals standing in the group. As Officer Troutt approached the [petitioner], the [petitioner] began walking faster, and Officer Troutt lost sight of the [petitioner] as he rounded the corner of the "D" building. Officer Troutt went around the other side of the building, and he caught up with the [petitioner] on the "south side" of the "E" building. He stated that he had still not seen the [petitioner's] face at that point, but he said that the [petitioner] was wearing "bulky coveralls." As Officer Troutt "closed the distance" between himself and the [petitioner], he said he still had not issued any commands to the [petitioner] and the [petitioner] had not looked back at him.

Officer Troutt saw the [petitioner] walking on the sidewalk, which was surrounded by a grassy area. He testified that he could see this area because it was well-lit, and he did not see anything in that area when he "reestablished contact with [the petitioner]." At that point, Officer Troutt saw the [petitioner] moving his arms "as if he was . . . inside his jacket getting

- 3 -

something from the front of his body[,]" which made him believe that the [petitioner] was "retrieving an item" from his jacket. Officer Troutt then saw the [petitioner] make a "throwing motion" to the front with his right arm, and he identified the item thrown as a black handgun. He agreed that he observed the gun "travel through the air and onto the ground." He said that the gun landed in the grassy area near the streetlight and that the ground was wet and muddy that night. Officer Troutt stated that the [petitioner] also threw a clear plastic bag to his left side, and he suspected that the bag contained marijuana. Based on these observations, Officer Troutt detained the [petitioner] and placed him under arrest, at which point he saw the [petitioner's] face and realized that the [petitioner] was not the subject of the arrest warrant.

After he arrested the [petitioner], Officer Troutt searched the area and found the handgun and bag of marijuana where he saw the [petitioner] throw these items. Officer Kenneth Shell photographed these items and testified that he used the flash on the camera to illuminate them. Officer Troutt confirmed that one of the photographs of the firearm showed that it was covered with wet mud, which was consistent with the weather conditions that night. Officer Troutt also identified the firearm that he recovered, as well as the magazine and the ammunition, all of which were admitted as exhibits at trial. He stated that the firearm was loaded when it was recovered, and it had five rounds in it. Officer Troutt also searched the [petitioner] at the scene and recovered $470 from his person, which was broken down into one $100 bill, fifteen $20 bills, five $10 bills, and four $5 bills. A set of black digital scales was recovered from the [petitioner] when he was searched at the jail, and Officer Troutt stated that there was marijuana residue on the scales. Officer Troutt photographed these items, and they were entered into evidence. After collecting all of the evidence, Officer Troutt researched the [petitioner's] criminal history and determined that the [petitioner] was a convicted felon, and, therefore, not able to legally possess a firearm. The parties stipulated to the following: "[O]n the day that [the petitioner] was arrested, January 20 of 2018, he did on each of the counts of the indictment have a prior felony conviction that qualifies as a felony conviction for attempted use of force, violence, or a deadly weapon."

On cross-examination, Officer Troutt stated that the apartment complex that he reported to was sometimes referred to as "Parkway East," and he said that he patrolled that area frequently at that time. He received the tip about the person he was searching for from a confidential informant. He did not know the [petitioner] before that night. He agreed that if someone is not wanted by the police, he or she was free to walk away from a police

- 4 -

officer. Officer Troutt could not remember if the [petitioner] was talking on his cell phone when he arrived. He agreed that the area could "potentially get pretty dark" and that he could not see the [petitioner] clearly because of how far away he was from him. Defense counsel refreshed Officer Troutt's memory of his testimony from a prior hearing, in which he said that he could see clearly that night, but he clarified that he could not see the [petitioner's] facial features. He said that the [petitioner] matched the description of the person he was looking for in build and in the type of clothing that he was wearing. Officer Troutt also agreed that he testified in a prior hearing that the [petitioner] looked back at him when Officer Troutt arrived at the scene. He stated that he did not have a body camera on that night, and he agreed that the [petitioner] never ran away from him.

Officer Troutt said that another officer was in the area when he saw the [petitioner] throw the firearm. He stated that he never called out to the [petitioner] or identified himself as police when he was following the [petitioner]. He believed that the [petitioner] was wearing coveralls based on the "bulkiness" of his clothing. He stated that the [petitioner] was the only person who he arrested at the scene that night. He agreed that the [petitioner's] "female friend" showed up at some point that night and that the [petitioner] may have called her at some point. He could not recall whether the [petitioner] was wearing gloves. On redirect examination, he said that he was "positive that [he] saw [the petitioner] throw [the firearm and the plastic bag] down on the ground." He also said that he could clearly see those items on the ground. Finally, Officer Troutt said there was no one else in the area at the time he arrested the [petitioner].

The [petitioner], age 42, testified that he had a prior criminal history consisting of convictions of aggravated burglary and passing worthless checks. He agreed that he was outside the Parkway East Apartment Complex on the night of the offense with 10 or more other men. He said that he lived approximately 30 to 40 yards away from his arrest location. Before the police arrived, the [petitioner] received a phone call from his wife, answered his phone, and began to walk away from the crowd. While he was walking away, one of the other men yelled the police were pulling into the parking lot and the crowd of men scattered. The [petitioner] said he did not run away because he had no reason to do so. The [petitioner] testified that he noticed an officer following him. The [petitioner] said that after walking some distance and around several buildings, the officer told the [petitioner] to "Stop. You got a warrant. Get off your phone." The [petitioner] eventually complied. He testified that after the officers determined that he was not the

person with the arrest warrant and that he did not have any outstanding warrants, the officers went to look "generally [in the] grassy area" because one of the officers said the [petitioner] may have thrown something. The [petitioner] implied that he did not walk by the area the officers were searching, and he was not arrested in the area where the gun and marijuana were found. The [petitioner] denied throwing a gun or marijuana to the ground and claimed the officer mistook his phone for a gun. The [petitioner] theorized the gun belonged to and was thrown by one of the other men in the crowd as they were running from the police. He insisted that had he thrown the gun to the ground his fingerprints would have been on it because he was not wearing gloves that night.

Based on the above proof, the jury convicted the [petitioner], as charged, of four counts of being a convicted felon in possession of a firearm. At a later hearing, the trial court merged each count and imposed a sentence of twenty-four years' imprisonment.

*State v. Hampton*, No. W2019-01551-CCA-R3-CD, 2021 WL 2917309, at *1-3 (Tenn. Crim. App. July 12, 2021), *perm. app. denied* (Tenn. Oct. 15, 2021).

Following the denial of his direct appeal, the petitioner filed a pro se petition for post-conviction relief on January 19, 2022, arguing, in part, that trial counsel was ineffective for failing to object to the admission of prejudicial evidence and that double jeopardy barred the State from using the facts of his first trial during his second trial. Though counsel was appointed, the petitioner did not file an amended petition. An evidentiary hearing was held on December 11, 2023, during which the petitioner and trial counsel testified.[2]

Trial counsel testified that he was appointed to represent the petitioner on multiple drug and weapons charges. On the morning of the petitioner's trial, the trial court broached the idea of severing the petitioner's convicted felon in possession of a firearm charges from the remaining counts. The State "objected strongly" to severing the charges, but the trial court was concerned about potential prejudice to the petitioner if all of the charges were tried together. Trial counsel agreed to sever the petitioner's four convicted felon in possession of a firearm charges because he believed "it was a better tactical decision to go along with what the [c]ourt had proposed to keep the jury from hearing about that prior felony." Although trial counsel did not recall the specifics of his discussion with the petitioner regarding severance, trial counsel was "sure [they] would have discussed [the

---

[2] We limit our recitation of the testimony at the evidentiary hearing to that relevant to the petitioner's issues on appeal.

fact that the petitioner would be subjected to a second trial] because that would have come up in court [when discussing] what charges we would have . . . going to trial on that day." Additionally, although trial counsel did not recall speaking to the petitioner about severance prior to the trial court's suggestion on the morning of the trial, trial counsel and the petitioner previously discussed the possibility of the petitioner stipulating to his status as a felon to prevent the jury from hearing the details of his prior felonies. Trial counsel agreed that, at the petitioner's first trial, the petitioner was found guilty of the lesser-included offense of simple possession and was acquitted of possession of a firearm during the commission of a dangerous felony. However, he stated that, if all the petitioner's charges were tried together, the jury still could have convicted the petitioner on the charge of convicted felon in possession of a firearm because "[t]hey could have thought he possessed it, but he didn't possess it in a felony drug offense."

Regarding double jeopardy, trial counsel did not recall the petitioner asking him about whether double jeopardy applied to his second trial, but if the petitioner had, trial counsel would have informed him that double jeopardy did not apply in the petitioner's case because the possession of a firearm during the commission of a dangerous felony and convicted felon in possession of a firearm charges were two different crimes with different elements.

The petitioner testified that trial counsel never explained the ramifications of severing the petitioner's convicted felon in possession of a firearm charges. According to the petitioner, on the morning of trial, the prosecutor stated that he "wasn't going to try [the petitioner] on all the possession counts" and "was going to set the one weapon possession count to the side and try it later." The petitioner was not sure what the prosecutor meant but did not ask trial counsel for an explanation.

Several months after his sentencing in the first trial, trial counsel told the petitioner that he needed to appear in court "to see if [the trial court] was going to go along with a second trial for the same gun." According to the petitioner, trial counsel stated that he did not think the trial court would allow a second trial because "it would be illegal." At the hearing, the trial court asked the prosecutor what he wanted to do, and the prosecutor stated that he wanted to proceed with the second trial. Although trial counsel told the petitioner that a second trial would be "illegal," he did not make this argument to the trial court. The petitioner was confused and told trial counsel that he would explain to the jury that he had already been acquitted of three weapon possession charges. However, trial counsel told him that was a bad idea.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

*Analysis*

On appeal, the petitioner argues trial counsel was ineffective for failing to advise the petitioner regarding the severance of his offenses. The petitioner also argues that allowing the facts from his first trial to be introduced at his second trial violated the principles of double jeopardy. The State contends that the post-conviction court properly denied relief and that the petitioner has waived his double jeopardy claim for failing to raise it in his motion for new trial and on direct appeal.

## I.    Ineffective Assistance of Counsel

The petitioner asserts that trial counsel was ineffective for failing to advise him regarding the severance of his convicted felon in possession of a firearm charges. He argues trial counsel "did not fully explain the ramifications of the severance" and insists that he would have stipulated to his criminal history at the first trial had trial counsel properly advised him. The State contends the post-conviction court properly found that trial counsel was not ineffective for failing to advise the petitioner.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by

the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Initially, we note that, while the petitioner challenged trial counsel's performance regarding his failure to object to the admission of the facts from his first trial during his second trial, the petitioner failed to challenge trial counsel's failure to advise him regarding the severance of his offenses in his pro se petition for post-conviction relief, and no amended petition was filed. Although trial counsel was questioned at the evidentiary hearing regarding the severance, the post-conviction court made no ruling on the issue. Issues not raised in the post-conviction petition cannot be raised for the first time on appeal. *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."). Accordingly, the petitioner has waived this issue.

Waiver notwithstanding, at the evidentiary hearing, trial counsel testified that the trial court broached the subject of severing the petitioner's convicted felon in possession of a firearm charges on the morning of trial. While the State objected to the severance, trial counsel believed "it was a better tactical decision to go along with what the [c]ourt had proposed to keep the jury from hearing about that prior felony." Although he could not recall the specifics of his discussion with the petitioner regarding the severance, trial

counsel was "sure" he told the petitioner that he would be subjected to a second trial on the severed offenses. The post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against its findings. *See Tidwell*, 922 S.W.2d at 500. In addition, the fact that a strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. *Id.* The petitioner is not entitled to relief on this issue.

## II.    Double Jeopardy

The petitioner argues his second trial violated the principles of double jeopardy when the State introduced the facts from his first trial. The petitioner asserts that he was "tried . . . two times for a single encounter with law enforcement." The State argues the petitioner has waived this issue for failing to raise it in his motion for new trial and on direct appeal.

Our post-conviction procedure statutes dictate that "[a] ground for relief is waived if a petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," except in two circumstances not relevant to this case. Tenn. Code Ann. § 40-30-106(g). This Court has repeatedly held that raising a double jeopardy claim in a post-conviction action when a petitioner has "fail[ed] to present such a claim for determination in any proceeding before a court of competent jurisdiction in which the claim could have been presented waives the claim for post-conviction purposes." *Jones v. State*, No. M2006-00664-CCA-R3-PC, 2007 WL 1174899, at *7 (Tenn. Crim. App. Apr. 20, 2007), *perm. app. denied* (Tenn. Sept. 17, 2007); *see also Clark v. State*, No. W2015-00186-CCA-R3-PC, 2016 WL 1250985, at *5 (Tenn. Crim. App. Mar. 30, 2016), *no perm. app. filed*; *Settles v. State*, No. W2008-00370-CCA-R3-PC, 2009 WL 1026006, at *2 (Tenn. Crim. App. Apr. 15, 2009), *no perm. app. filed*. Because the petitioner raised his double jeopardy claim for the first time in his post-conviction petition, the issue is waived.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the petitioner post-conviction relief.

_____

J. ROSS DYER, JUDGE